RECEIPT # 52552
AMOUNT $ 150.00
SUMMONS ISSUED Yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. Kim Abaud
DATE 12-17-03

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERK'S OFFICE
2003 DEC 17 A 11: 23
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| **MEDEA PALANDJIAN, derivatively on behalf of ING PRINCIPAL PROTECTION FUND II and ING PRINCIPAL PROTECTION FUND IV,**<br><br>Plaintiffs,<br><br>vs.<br><br>**ING FUNDS DISTRIBUTOR, LLC, ING INVESTMENTS, LLC, AND AELTUS INVESTMENT MANAGEMENT INC.,**<br><br>Defendants,<br><br>and<br><br>**ING PRINCIPAL PROTECTION FUND II and ING PRINCIPAL PROTECTION FUND IV,**<br><br>**Nominal Defendants.** | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>**03-12530JLT**<br><br>MAGISTRATE JUDGE Alexander |

**DERIVATIVE COMPLAINT**

Plaintiff, through her attorneys, alleges upon information and belief, except as to the allegations which pertain to the plaintiff and her counsel, which are alleged upon personal knowledge. Plaintiff's information and belief are based, *inter alia*, on the investigation made by her attorneys.

SCANNED
DATE: 12/16/03
BY: TOM

## INTRODUCTION

This is an action brought by the Plaintiff against the Defendants, ING Funds Distributor LLC, ING Investments, LLC, and Aeltus Investment Management Inc., derivatively on behalf of ING Principal Protection Fund II and ING Principal Protection Fund IV (collectively referred to herein as the "Funds"), for breach by the Defendants of their fiduciary duty to the Funds and the Funds' shareholders and for violation of Section 36(b) of the Investment Company Act of 1940 (the "Investment Company Act"), 15 U.S.C. §80a-35(b). The Plaintiff alleges herein that the Defendants have breached their fiduciary duty to the Funds and their shareholders, and violated Section 36(b) of the Investment Company Act, by charging and receiving from the Fund, Rule 12b-1 distribution fees (the "Distribution Fees") and advisory fees which are excessive. Plaintiff seeks recovery for the Funds, from the Defendants, the excessive fees paid by the Funds to the Defendants.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to Section 44 of the Investment Company Act and 28 U.S.C. §§1331,1332,1337 and 1367. The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.  This action arises under and is brought pursuant to Section 36(b) of the Investment Company Act and the common law of the Commonwealth of Massachusetts.

3.  Venue is proper in this district pursuant to Section 44 of the Investment Company Act and 28 U.S.C. §1391(b), because the Fund is organized pursuant to Massachusetts law and because the Defendants transact business in this district and many of the acts complained of herein occurred in substantial part in this district.

4. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails and the interstate telephonic voice and data communications.

**PARTIES**

5. The Plaintiff Medea Palandjian purchased 2033.176 Class "B" shares of ING Principal Protection Fund II on January 31, 2002 and purchased 5009.12 Class "B" shares of ING Principal Protection Fund IV on July 17, 2002 and has owned those shares continuously to the present.

6. The Defendant, ING Investments, LLC ("ING Investments"), formerly known as ING Pilgrim Investments, LLC, is a Delaware limited liability company. It is an "investment advisor" to the Fund, as that term is defined in Section 2(a)(20) of the Investment Company Act, and as that term is used in Section 36(b) of the Investment Company Act. ING Investments is an indirect wholly-owned subsidiary of ING Groep N.V. ("ING Group"). It is an "affiliated company" and an "affiliated person" of the Defendants Aeltus Investment Management, Inc., and ING Funds Distributor, LLC., as those terms are defined in Sections 2(a)(2) and 2(a)(3)(C) of the Investment Company Act. It is an affiliated person of those Defendants as that term is used in Section 36(b) of the Investment Company Act.

7. The Defendant Aeltus Investment Management, Inc. ("Aeltus"), is a corporation organized under the laws of the State of Connecticut. It is an "investment advisor" to the Funds, as that term is defined in Section 2(a)(20) of the Investment Company Act, and as that term is used in Section 36(b) of the Investment Company Act. Aeltus is an indirect wholly-owned subsidiary of ING Group. It is a "affiliated company" and

an "affiliated person" of the Defendants ING Investments and ING Funds Distributor, L.C., as those terms are defined in Sections 2(a)(2) and 2(a)(3)(C) of the Investment Company Act. It is an affiliated person of those Defendants as that term is used in Section 36(b) of the Investment Company Act.

8.    The Defendant, ING Funds Distributor, LLC ("ING Distributor") is a limited liability company. ING Distributor is an indirect wholly-owned subsidiary of ING Group. It is an "affiliated company" and "affiliated person" of the Defendants ING Investments and Aeltus, as those terms are defined in Sections 2(a)(2) and 2(a)(3)(C) of the Investment Company Act. It is an affiliated person of those Defendants as that term is used in Section 36(b) of the Investment Company Act.

9.    The Nominal Defendants, ING Principal Protection Fund II ("PPF II") and ING Principal Protection Fund IV ("PP Fund IV"), are part of the ING Equity Trust (the "Trust"), which is an open-end investment management company registered under the Investment Company Act. The Trust is a Massachusetts business trust with at least 20 separate funds including PPF II and PP Fund IV.

### Facts Regarding the Funds

10.    The Funds are part of a series of virtually identical registered open-end investment management companies which have been formed by the Defendants and their affiliates. Those other funds are entitled the ING Principal Protection Fund, ING Principal Protection Fund III, ING Principal Protection Fund V, ING Principal Protection Fund VI, ING Principal Protection Fund VII and ING Principal Protection Fund VIII. ING Principal Protection Fund VIII ("PP Fund VIII") has been recently formed and, as of the filing of this Complaint, it is in its Offering Period, when its shares are being offered to the public. They

are collectively referred to herein as the "Other PP Funds." All of the Other PP Funds are part of the ING Equity Trust.

11. The business and affairs of the ING Equity Trust and of the Funds are purportedly managed under the direction of the ING Equity Trust Board of Trustees. There are eleven trustees who are the members of the Trust's Board of Trustees.

12. Two of those Trustees, Thomas J. McInerney and John G. Turner, are considered by the Trust to be "interested persons" and hence, not independent trustees of the Trust.

13. The other trustees of the Trust are: Paul S. Doherty, J. Michael Earley, R. Barbara Gitenstein, Walter H. May, Jock Patton, David W.C. Putnam, Blaine E. Rieke, Roger B. Vincent and Richard A. Wedemeyer. Those trustees have been designated by the Fund as persons who are not an interested person of the Trust, as defined in the Investment Company Act, and hence, they have been designated by both of the Funds as independent trustees. Those Trustees are hereinafter collectively referred to as the "'Independent' Trustees" or the "Disinterested Trustees." The use of those terms to refer to those trustees is based upon that designation by the Fund, and is not a statement by Plaintiff that those Trustees have been properly designated as independent or disinterested trustees, under the Investment Company Act.

14. All of the trustees of the Trust identified in the two preceding paragraphs are sometimes collectively referred to herein as the "Trustees" or the "Board of Trustees."

15. For all purposes under the Investment Company Act and SEC Rule 12b-1 promulgated thereunder, the Board of Trustees of the Trust constitute the "board of directors" of the Trust and the Funds as the term "board of directors" is used in the

Investment Company Act and Rule 12b-1.

16. For all purposes under the Investment Company Act and SEC Rule 12b-1 the Trustees are the "directors" of the Trust and the Funds as the term "directors" is used in the Investment Company Act and Rule 12b-1.

17. The Trustees are also the directors or trustees of all of the Other PP Funds.

18. The "Independent" Trustees are the directors or trustees of numerous trusts which are part of the ING mutual fund complex which trusts have a total of 114 portfolios.

## SUBSTANTIVE ALLEGATIONS

### The Excessive Rule 12b-1 Distribution Fees

19. Shares in PPF II were offered for sale to the public pursuant to a prospectus dated November 5, 2001 (the "PPF II Prospectus"). Under the terms of the offering investors could purchase shares in PPF II only during the time period from November 5, 2001 through January 31, 2002, which time period was referred to in the prospectus as the "Offering Phase."

20. The period from February 1, 2002 through January 31, 2007, is defined in the PPF II Prospectus as the "Guarantee Period." During the PPF II Guarantee Period no additional shares of PPF II have been or will be sold either to the general public or to the existing shareholders of PPF II, except for the reinvestment of shares into PPF I of dividends received from PPF II by current shareholders.

21. The PPF II Prospectus defines the period after February 1, 2007 as the "Index Plus LargeCap Period." During the PPF II Index Plus LargeCap Period, shares of

PPF II will be offered, on a continuing basis, only to existing shareholders of PPF II.

22.     Shares in PPF IV were offered for sale to the public pursuant to a prospectus dated June 7, 2002 (the "PPF IV Prospectus"). Similar to PPF II, under the terms of the PPF IV offering investors could purchase shares in PPF IV only during an "Offering Phase," which ran from July 1, 2002 through September 30, 2002.

23.     The PPF IV Prospectus defined a Guarantee Period as the period from October 8, 2002 through October 8, 2007. During the PPF IV Guarantee Period no additional shares of PPF IV have been or will be sold either to the general public or to the existing shareholders of PPF IV, except for the reinvestment of shares into PPF IV of dividends received from PPF IV by current shareholders.

24.     Likewise, the PPF IV Prospectus defines the period after October 9, 2007 as the "Index Plus LargeCap Period." During the PPF IV Index Plus LargeCap Period, shares of PPF IV will be offered, on a continuing basis, only to existing shareholders of PPF IV.

25.     Securities and Exchange Commission ("SEC") Rule 12b-1 permits, subject to specified requirements, the establishment by a registered open-end management investment company of a Rule 12b-1 plan and the entering into by a registered open-end management company, a Rule 12b-1 agreement, which plan and agreement provide for the payment by the registered open-end management investment company for activities which are primarily intended to result in the sale of shares issued by such company, including, but not necessarily limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature.

26. SEC Rule 12b-1 requires that:

a. any Rule 12b-1 plan providing for distribution payments to be made by a registered open-end management investment company, must be terminable at any time by a vote of a majority of the disinterested directors of the investment company;

b. any agreement to implement a Rule 12b-1 plan providing for distribution payments to be made by a registered open-end management investment company, must be terminable on 60 days notice by a vote of a majority of the disinterested directors of the investment company;

c. any Rule 12b-1 plan or agreement to implement such a plan, which provides that it shall continue in effect for more than one year, must provide that such continuance be specifically approved, at least annually, by a majority of the board of directors and majority of the disinterested directors;

d. directors of an investment company may not approve the implementation or the continuation of a Rule 12b-1 plan, unless they conclude, in the exercise of reasonable business judgment and in light of their fiduciary duties under state law and under Sections 36(a) and (b) of the Investment Company Act, that there is a reasonable likelihood that the plan will benefit the investment company and its shareholders.

27. In light of the lack of any public sales or distribution of shares of PPF II and PPF IV during the Guarantee Periods for each of the Funds, the costs incurred by the Defendant ING Distributor or any other affiliated company of the Defendants during the Guarantee Periods for PPF II and PPF IV, for any activity which was or will be primarily intended to result in the sale of shares issued by the Funds during the respective Guarantee Periods, including, but not limited to, advertising, compensation of underwriters,

dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature, have been and will continue to be *de minimus*.

28.     Prior to the beginning of the Offering Phases for PPF II and PPF IV, each of the Funds enacted a plan (the "Plan" and collectively the "Plans") purportedly pursuant to SEC Rule 12b-1, pursuant to which PPF II and PPF IV would pay the Defendant ING Distributor an annual Distribution Fee (paid monthly) equal to 1% of the net asset value of each of the Class B and Class C shares of the Funds and .25% of the net asset value of the Class A and Class Q shares of the Funds.

29.     Since the respective Plans for PPF II and PPF IV were enacted prior to the sale of shares of the Funds to the public, the Plans were not approved by a vote of a majority of the owners of a majority of the outstanding shares of either PPF II or PPF IV. *See* Rule 12b-1(b)(1).

30.     The Plans for PPF II and PPF IV were both approved by unanimous votes of their respective Board of Trustees and by unanimous votes of their "Disinterested" Trustees.

31.     Prior to the beginning of the Offering Phase for both PPF II and PPF IV, each of the Funds also entered into an agreement with the Defendant ING Distributor (the "Agreement" and collectively the "Agreements"), pursuant to their respective Plans and purportedly pursuant to Rule 12b-1, pursuant to which both PPF II and PPF IV would pay the Defendant ING Distributor an annual Distribution Fee (paid monthly) equal to 1% of the net asset value of the Class B and Class C shares of each of the Funds and .25% of the net asset value of the Class A and Class Q shares of the Fund.

32. The Agreements for PPF II and PPF IV were approved by unanimous votes of their respective Board of Trustees of the Fund and by unanimous votes of the "Disinterested" Trustees of the Funds.

33. The Plans and Agreements for PPF II and PPF IV provide (as required by Rule 12b-1(b)(3)(i)) that they may continue for more than one year only if they are specifically approved by a vote of the Board of Trustees and by a vote of the "Independent" Trustees, at least annually.

34. On information and belief, the Trustees and the "Independent" Trustees of PPF II specifically voted unanimously to continue both the Plan and the Agreement for PPF II on at least two annual occasions, since their original approval of the Plan and the Agreement for PPF II.

35. On information and belief, the Trustees and the "Independent" Trustees of PPF IV specifically voted unanimously to continue both the Plan and the Agreement for PPF IV at least once since their original approval of the Plan and the Agreement for PPF IV.

36. On information and belief, the Trustees of both PPF II and PPF IV, at least quarterly since their initial approval of the Plans and Agreements, have received and reviewed a written report of the Distribution Fees paid by each of the Funds to the Defendant ING Distributor and the purposes for which such expenditures were made. The Trustees did not vote to discontinue or terminate the Plan or the Agreement for either of the Funds after any of those reviews.

37. Since February 1, 2002, the beginning of the Guarantee Period for PPF II, to the present, PPF II has been charged by, and has paid to, the Defendant ING

10

Distributor, pursuant to the PPF II Plan and the PPF II Agreement, a Distribution Fee (paid monthly) equal to 1% of the net asset value of the Class B and Class C shares of PPF II and .25% of the net asset value of the Class A and Class Q shares of PPF II. During its fiscal year ended May 31, 2002, PPF II paid the Defendant ING Distributor approximately $2,758,000 in Distribution Fees. During its fiscal year ended May 31, 2003, the PPF II paid the Defendant ING Distributor approximately $6,267,000 in Distribution Fees. Plaintiffs estimate that PPF II, since May 31, 2003, continued to pay the Defendant ING Distributor approximately the same periodic amounts for Distribution Fees as it did during its fiscal year ended May 31, 2003. Accordingly, the Plaintiff estimates that PPF II has paid the Defendant ING Distributor approximately $6,267,000 in Distribution Fees during the one-year period prior to the filing of this Complaint and approximately $12,158,500 in Distribution Fees since the beginning of the Guarantee Period.

38.     Since October 8, 2002, the beginning of the Guarantee Period for PPF IV, to the present, PPF IV has been charged by, and has paid to, the Defendant ING Distributor, pursuant to the PPF IV Plan and the PPF IV Agreement, a Distribution Fee (paid monthly) equal to 1% of the net asset value of the Class B and Class C shares of PPF IV and .25% of the net asset value of the Class A and Class Q shares of PPF IV. During its fiscal year ended May 31, 2003, PPF IV paid the Defendant ING Distributor approximately $5,998,000 in Distribution Fees. Plaintiffs estimate that PPF IV, since May 31, 2003, continued to pay the Defendant ING Distributor approximately the same periodic amounts for distribution fees as it did during its fiscal year ended May 31, 2003. Accordingly, the Plaintiffs estimate that PPF IV has paid the Defendant ING Distributor approximately $9,000,000 in Distribution Fees during the one-year period prior to the filing

11

of this Complaint and approximately $9,750,000 in Distribution Fees since the beginning of the Guarantee Period.

39.  The Distribution Fees paid by PPF II and PPF IV to the Defendant ING Distributor were excessive, because those payments materially exceeded the expenses incurred by the Defendant ING Distributor during that time period, which expenses were incurred primarily to result in the sale of shares issued by PPF II and PPF IV, including but not limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature. In fact, as explained above, those expenses of Defendant ING Distributor since the beginning of the Guarantee Periods were *de minimus*.

40.  Plaintiff estimates that PPF II, after the filing of this Complaint, will continue to pay the Defendant ING Distributors approximately the same periodic amounts for Distribution Fees as it did during its fiscal year ended May 31, 2003. Accordingly, the Plaintiff estimates that PPF II will pay the Defendant ING Distributor, each month after the filing of this Complaint, approximately $522,000 in Distribution Fees.

41.  Plaintiff estimates that PPF IV after the filing of this Complaint, will continue to pay the Defendant ING Distributors approximately the same periodic amounts for Distribution Fees as it did during its fiscal year ended May 31, 2003. Accordingly, the Plaintiff estimates that PPF IV will pay the Defendant ING Distributor, each month after the filing of this Complaint, approximately $750,000 in Distribution Fees.

42.  The Distribution Fees that will be paid by PPF II and PPF IV to the Defendant ING Distributor after the filing of this Complaint and during the Guarantee Periods will be excessive, because those payments will materially exceed the expenses that will be

incurred by the Defendant ING Distributor after the filing of the Complaint and during the Guarantee Period for each of the Funds, which expenses will be incurred primarily to result in the sale of shares issued by the Funds, including, but not limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature. In fact, as explained above, those expenses of Defendant ING Distributor after the filing of this Complaint and during the Guarantee Period for each of the Funds, will be *de minimus.*

43.    In light of the fact that no sales of PPF II or PPF IV shares have been, or will be, made to the public during the Guarantee Period for either of the Funds, the continuation of the Plan and Agreement with the Defendant ING Distributor for each of the Funds, during their respective Guarantee Periods was (and continues to be) without any reasonable basis because there was (and continues to be) not only no reasonable likelihood, there was (and continues to be) in fact no likelihood, that the continuation of the Plans and the Agreements during those time periods would benefit either of the Funds or their shareholders.

44.    In light of the fact that no sales of PPF II or PPF IV shares have been, or will be, made to the public during the Guarantee Period for either Fund, the payment by the Funds of the above referenced Distribution Fees during Guarantee Period for each of the Funds was (and continues to be) without any reasonable basis because there was (and continues to be) not only no reasonable likelihood, there was (and continues to be) in fact no likelihood, that the payment by PPF II and PPF IV of the above referenced Distribution Fees to the Defendant ING Distributor during those time periods would benefit the Funds

and their shareholders.

45. The Trustees of the Funds have a fiduciary duty to the Funds and their shareholders.

46. By approving the Plan and the Agreement for each of the Funds, and by approving the continuation of the Plan and the Agreement for each of the Funds during the corresponding Guarantee Period, in light of the fact that there was no reasonable likelihood that payment by the Funds of the Distribution Fees set forth in the Plan and the Agreement for each of the Funds would benefit the Funds and their shareholders, the Trustees breached their fiduciary duty to the Funds and their shareholders and breached their obligations under SEC Rule 12b-1(e).

47. As an affiliated company of the Defendants ING Investments and Aeltus, Defendant ING Distributor has a fiduciary duty to the Funds and their shareholders. Furthermore, as an affiliated company of the Defendants ING Investments and Aeltus, NG Distributor is liable under Sec. 36(b) of the Investment Company Act to the Funds for excessive compensation or payments paid to it by the Funds.

48. By collecting excessive Distribution Fees from the Funds during the Guarantee Period for each Fund, ING Distributor breached its fiduciary duty to the Funds and their shareholders and is liable for those excessive Distribution Fees paid to it by the Funds pursuant to Sec. 36(b) of the Investment Company Act and the common law.

49. By continuing to collect excessive Distribution Fees from the Funds after the filing of this Complaint, ING Distributor continues to breach its fiduciary duty to the Funds and their shareholders and to violate Sec. 36(b) of the Investment Company Act and is liable for those excessive Distribution Fees that will be paid to it by the Funds after the filing