of this Complaint pursuant to Sec. 36(b) of the Investment Company Act and the common law.

### The Excessive Management and Advisory Fees

50. Sec. 15(a) of the Investment Company Act provides that any contract to serve as an investment advisor of a registered investment company must:

   a. specify precisely all compensation to be paid thereunder;

   b. provide that it is terminable, without cause and without penalty, on no more than sixty days notice, by the investment company's board of directors;

   c. provide that it may continue in effect for more than two years only if its continuance is specifically approved annually by a vote of the board of directors of the investment company.

51. Both of the Funds have advisory and sub-advisory contracts with the Defendants ING Investments and Aeltus which contain the provisions described in the preceding paragraph (the "Investment Advisory Contracts").

52. On information and belief, the Investment Advisory Contracts were approved by a unanimous vote of the Trustees for each of the Funds.

53. On information and belief, the continuation of the Investment Advisory Contracts was approved by the unanimous vote of the Trustees some time prior to the filing of the Complaint.

54. The Defendant ING Investments, as the investment advisor for the Funds, has overall and ultimate responsibility for the management of the Funds' investments, pursuant to the investment criteria set forth in the PPF II and PPF IV Prospectuses. The

Defendant Aeltus, as the investment sub-advisor for the Funds, has the operating responsibility for the management of the Funds' investments, pursuant to the investment criteria set forth in the PPF II and PPF IV Prospectuses.

55.  The Prospectus for PPF II describes, at pages 2, 3 and 15, investment criteria for PPF II, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as PPF II's investment advisor and sub-advisor, respectively. Page 15 also sets forth the advisory and sub-advisory fees to be paid by the Fund to the Defendants, ING Investments and Aeltus. A copy of those pages of the PPF II Prospectus are attached hereto as Exhibit A, and are incorporated herein by reference.

56.  As reflected in Exhibit A, the assets of PPF II are allocated, based upon criteria described therein, into two components, the Equity Component and the Fixed Component.

57.  Since the commencement of the Guarantee Period, the Defendant ING Investments has been paid an advisory fee by PPF II of .80% of the Net Asset Value of PPF II, each year, in payment for the advisory services described above and in Exhibit A. That .80% advisory fee is paid on all of the Net Asset Value of PPF II, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

58.  Since the commencement of the Guarantee Period, the Defendant Aeltus has been paid a sub-advisory fee of .40% of the Net Asset Value of PPF II, each year, in payment for the sub-advisory services described above and in Exhibit A. Aeltus' sub-advisory fee has been paid by ING Investments, out of the advisory fee paid to ING Investments by PPF II. That .40% sub-advisory fee is paid on all of the Net Asset Value of PPF II, without regard to whether those assets are invested in the Equity Component or

the Fixed Component.

59. Likewise, the PPF IV Prospectus describes, at pages 2, 3 and 15, the investment criteria for PPF IV, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as PPF IV's investment advisor and sub-advisor, respectively. Page 15 also sets forth the advisory and sub-advisory fees to be paid by PPF IV to the Defendants, ING Investments and Aeltus. A copy of those pages of the PPF IV Prospectus are attached hereto as Exhibit B, and are incorporated herein by reference.

60. As reflected in Exhibit B, the assets of PPF IV are allocated, based upon criteria described therein, into two components, the Equity Component and the Fixed Component.

61. Since the commencement of the Guarantee Period, the Defendant ING Investments has been paid an advisory fee by PPF IV of .80% of the Net Asset Value of PPF IV, each year, in payment for the advisory services described above and in Exhibit B. That .80% advisory fee is paid on all of the Net Asset Value of PPF IV, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

62. Since the commencement of the Guarantee Period, the Defendant Aeltus has been paid a sub-advisory fee of .40% of the Net Asset Value of PPF IV, each year, in payment for the sub-advisory services described above and in Exhibit B. Aeltus' sub-advisory fee has been paid by ING Investments, out of the advisory fee paid to ING Investments by PPF IV. That .40% sub-advisory fee is paid on all of the Net Asset Value of PPF IV, without regard to whether those assets are invested in the Equity Component or the Fixed Component.

17

63.     A supplement dated July 22, 2003, was issued to the PPF II Prospectus and the PPF IV Prospectus (the "Supplement"). A copy of the Supplement is attached hereto as Exhibit C and incorporated herein by reference. The Supplement provides that under specified circumstances, the Equity Component of the Funds' investments (and the investments of the Other PP Funds) could be invested in exchange traded funds ("ETFs"), which are passively managed investment companies traded on a securities exchange whose goal is to track or replicate a desired index. The Supplement did not disclose any change in any investment advisory fees paid by the Funds to the Defendants, ING Investments and Aeltus. Accordingly, the Funds will both pay the Defendant, ING Investments, .80% of the net asset value of the assets of each of the Funds invested in the ETFs and Aeltus will be paid a sub-advisory fee of .40% of the net asset value of each of the Funds' assets invested in the ETFs.

64.     The Funds and the Other PP Funds have numerous common characteristics, and no material differences, in the way they are organized, marketed and in the way their assets are managed and invested. Some of those common characteristics are:

    a.  They are all part of the ING Equity Trust, which is an open-end investment management company registered under the Investment Company Act. The ING Equity Trust is a Massachusetts business trust with at least 20 separate funds, two of which are the Funds and six of which are the Other PP Funds.

    b.  Their shares were sold to the public only during limited time periods, called the Offering Phase or Offering Period. Thereafter there is a Guarantee Period of five years. During the Guarantee Period no shares will be sold to either the public or current shareholders, except for the reinvestment of

dividends by current shareholders. Thereafter there will be an Index Plus LargeCap Period, during which shares will be offered, on a continuing basis, only to existing shareholders.

c. The investment criteria and asset allocation during each of the defined time periods – the Offering Phase, the Guarantee Period and the Index Plus LargeCap Period – are identical or virtually identical.

d. The Defendant ING Investments is the investment advisor for all of the Other PP Funds and its duties and responsibilities as investment advisor is identical for the Funds and for all of the Other PP Funds.

e. The Defendant Aeltus is the investment sub-advisor for all of the Other PP Funds and its duties and responsibilities as investment sub-advisor is identical for the Funds and for all of the Other PP Funds.

f. The same individual, Mary Ann Fernandez, Senior Vice President of Aeltus, serves as strategist for the Funds and all of the Other PP Funds. Furthermore, Ms. Fernandez is responsible for overseeing the overall strategy of the Funds and all of the Other PP Funds and the allocation of Funds' assets and the assets of the Other PP Funds, between the Equity and Fixed Components.

g. The same individual, Hugh T. M. Whelan, Portfolio Manager at Aeltus, co-manages the Equity Component of the investments of the Funds and the Equity Component of the investments of all of the Other PP Funds.

h. The same individual, Douglas E. Cote, Portfolio Manager at Aeltus, co-manages the Equity Component of the investments of the Funds and the

    Equity Component of the investments of all of the Other PP Funds.

 i. The same individual, John Murphy, Portfolio Manager at Aeltus, manages the Fixed Component investment of the Funds and all of the Other PP Funds.

65. The Prospectus ("PPF VII Prospectus") for the Principal Protection Fund VII ("PPF VII") describes, at pages 2, 3, and 17, investment criteria for the PPF VII, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as PPF VII's investment advisor and sub-advisor, respectively. Page 17 also sets forth the advisory and sub-advisory fees to be paid by PPF VII to the Defendants, ING Investments and Aeltus. A Supplement, dated June 24, 2003, to the PPF VII Prospectus (the "PPF VII Supplement"), discloses the waiver, by ING Investments, of the entire .80% management fee described on page 17 of the PPF VII Prospectus. Pages 2, 3 and 17 of the PPF VII Prospectus and the PPF VII Supplement are attached hereto as Exhibit D and are incorporated herein by reference.

66. As reflected in Exhibit D, the Defendant ING Investments is currently being paid no annual investment advisory fee on the net asset value of the PPF VII. This is .80% less than the investment advisory fee which ING Investments charges the PPF II and PPF IV.

67. As reflected in Exhibit D, before the waiver of the advisory fee described in the PPF VII Supplement, Aeltus was to receive an annual sub-advisory fee during the Guarantee Period of .36% of the net asset value of the PPF VII.

68. As reflected in Exhibits A, B, C, and D, the duties and responsibilities of the Defendant ING Investments, as investment advisor for PPF II, PPF IV and PPF VII (which

20

have virtually identical investment criteria and parameters) are identical. Nevertheless the Defendant ING Investments has charged, and continues to charge, PPF II and PPF IV more of the net asset value of the Funds' investments than it will be paid by PPF V for identical investment advisory services.

69. The Prospectus for Principal Protection Fund VIII ("PPF VIII") describes, at pages 2, 3 and 17, investment criteria for PPF VIII, during the Guarantee Period, and the responsibilities of the Defendants ING Investments and Aeltus as PPF VIII's investment advisor and sub-advisor, respectively. Page 17 also sets forth the advisory and sub-advisory fees to be paid by PPF VIII, the Defendants, ING Investments and Aeltus. A copy of those pages of the Prospectus for the PPF VIII are attached hereto as Exhibit E, and are incorporated herein by reference.

70. As reflected in Exhibit E, the Defendant ING Investments will be paid an annual investment advisory fee of .80% of net asset value of PPF VIII investments in the Equity Component of the asset allocation but ING Investments will only be paid an annual investment advisory fee of .55% of the net asset value of PPF VIII investments in the Fixed Component and ETS Component of the asset allocation. This is .25% of the Net Asset Value of the investments in the Fixed Component and the ETS Component less than the .80% investment advisory fee which ING Investments charges PPF II and PPF IV for their investments in their Fixed and ETS Components.

71. As reflected in Exhibits A, B, C, and E, the duties and responsibilities of the Defendant ING Investments, as investment advisor for PPF II, PPF IV and PPF VIII (which have virtually identical investment criteria and parameters) are identical. Nevertheless, the Defendant ING Investments has charged, and continues to charge, PPF II and PPF IV

21

.25% more of the net asset value of the Funds' investments in their Fixed and ETS Components than it will be paid by PPF VIII for identical investment advisory services.

72.  Those facts demonstrate that the investment advisory fees received by Defendant ING Investments from PPF II and PPF IV, and to be received after the filing of this Complaint, are excessive.

73.  As the investment advisor to the Funds, the Defendant ING Investments has a fiduciary duty to the Funds and their shareholders.

74.  By collecting excessive investment advisory fees from the Funds, Defendant ING Investments breached its fiduciary duty to the Funds and their shareholders and violated Sec. 36(b) of the Investment Company Act.

75.  By continuing to collect excessive investment management fees from the Funds after the filing of this Complaint, Defendant ING Investments continues to breach its fiduciary duty to the Funds and their shareholders and violate Sec. 36(b) of the Investment Company Act.

76.  As reflected in Exhibit D, the Defendant Aeltus will be paid an annual investment sub-advisory fee of .36% of the net asset value of the investments of PPF VII during the Guarantee Period, if the waiver of the investment advisory fees described in the PPF VII Supplement is reversed. This would be .04% less than the investment sub-advisory fee which Aeltus receives as investment sub-advisor for PPF II and PPF IV

77.  As reflected in Exhibit E, the Defendant Aeltus will be paid an annual investment sub-advisory fee of .36% of the net asset value of the investments of PPF VIII in the Equity Component and .2475% of the net asset value of investments of PPF VIII in the Fixed Component. This is .04% less than the investment sub-advisory fee which

22

Aeltus receives as investment sub-advisor for PPF II and PPF IV for Equity Component investments and .1525% less than the investment sub-advisory fee which Aeltus receives as investment sub-advisor of PPF II and PPF IV for the Funds' Fixed Component investments.

78. As reflected in Exhibits A, B, C, D, and E, the duties and responsibilities of the Defendant Aeltus, as investment sub-advisor for PPF II, PPF IV, PPF VII and VIII (all of which have virtually identical investment criteria and parameters) are identical. Nevertheless, the Defendant Aeltus has received, and continues to receive, more from PPF II and PPF IV than it will be paid for identical investment sub-advisory services to PPF VII and PPF VIII.

79. Those facts demonstrate that the investment sub-advisory fees received by Defendant Aeltus, and to be received after the filing of this Complaint, are excessive

80. As the investment sub-advisor to the Funds, the Defendant Aeltus has a fiduciary duty to the Funds and their shareholders.

81. By collecting excessive investment sub-advisory fees, Defendant Aeltus breached its fiduciary duty to the Funds and their shareholders and violated Sec. 36(b) of the Investment Company Act.

82. By continuing to collect excessive investment advisory fees after the filing of this Complaint, Defendant Aeltus continues to breach its fiduciary duty to the Funds and their shareholders and violate Sec. 36(b) of the Investment Company Act.

23

## DERIVATIVE ALLEGATIONS

83.  This action is brought by the Plaintiff derivatively, on behalf of the Funds, to recover excessive Rule 12b-1 Distribution Fees paid by the Funds to the Defendant NG Distributor.

84.  This action is also brought by the Plaintiff, derivatively, on behalf of the Funds to recover excessive management or advisory fees paid by the Funds to the Defendants, ING Investments and Aeltus.

85.  In each instance, the charging of, and receiving of, excessive fees by the Defendants, from the Funds, constituted a breach by the Defendants of their fiduciary duty to the Funds and violated Sec. 36(b) of the Investment Company Act.

86.  This action is brought by the Plaintiff, derivatively, on behalf of the Funds, pursuant to Rule 36(b) of the Investment Company Act. Accordingly, the Plaintiff was not required to, and has not, made demand upon the Trustees of the Funds to bring this action on behalf of the Funds. *See, Daily Income, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831 (1984).

87.  Even if it had been required for demand to be made upon the Trustees to cause the Funds to bring this action against the Defendants, the making of such demand in this case would have been futile and, hence, is excused.

88.  Demand upon the Trustees would have been futile because the claims asserted herein against the Defendant Distributor are based upon the excessiveness of Distribution Fees charged to the Funds by the Defendant Distributor pursuant to the Plans and the Agreements, which the Trustees have specifically voted to approve, and thereafter specifically voted to continue on at least two occasions with respect to PPF II and on at

24

least one occasion with respect to PPF IV.

89.   Demand upon the Trustees would have been futile because the claims asserts herein against the Defendants ING Investments and Aeltus are based upon the excessiveness of advisory and sub-advisory fees charged to the Funds by those defendants pursuant to the Advisory Fee Contracts which the Trustees have specifically voted to approve, and thereafter specifically voted to continue on at least one occasion.

90.   Under these circumstances, each of the Trustees is deemed "interested" in the transactions and conduct at issue, because each of the Trustees ". . . is a party to the transactions and conduct."   1.   ALI Principal of Corporate Government: Analysis and Recommendations Section 1.23(a)(1) (1994) as cited in *Harhen v. Brown*, 431 Mass. 838, 843 (2000).

91.   There being no disinterested trustees with respect to this matter, demand on the Trustees would be futile.

92.   That demand would be futile under these circumstances is reinforced by the following conclusion in *Daily Income Fund, Inc.*, 464 U.S. at 546 (Stevens, J., concurring):

> . . . a demand requirement would serve no meaningful purpose
> . . . the contract between the fund and its investment advisor had been expressly approved by the independent directors of the fund.  Since the disinterested directors are required to review and approve all advisory fee contracts under §15 of the Act. . . a demand would be a futile gesture after directors have already passed on the contract. . . .

25

## COUNT I

### Against the Defendant ING Distributor for
### Breach of Fiduciary Duty to PPF II and Its Shareholders and for
### Violation of Sec. 36(b) of the Investment Company Act

93. The Plaintiff repeats and realleges all of the preceding paragraphs in this Complaint.

94. The Defendant ING Distributor is liable to PPF II for breach of its fiduciary duty to PPF II and its shareholders and for violation of Sec. 36(b) of the Investment Company Act.

95. PPF II has been damaged by the Defendant ING Distributor's breach of its fiduciary duty to PPF II and its shareholders and by its violation of Sec. 36(b) of the Investment Company Act, by the amount which the Defendant ING Distributor received from and will receive from PPF II as Distribution Fees during the Guarantee Period.

## COUNT II

### Against the Defendants ING Investments and Aeltus for
### Breach of Fiduciary Duty to PPF II and Its Shareholders and for
### Violation of Sec. 36(b) of the Investment Company Act

96. The Plaintiff repeats and realleges all of the preceding paragraphs in this Complaint.

97. The Defendant ING Investments and Aeltus are liable to PPF II for breach of their fiduciary duties to PPF II and its shareholders and for violation of Sec. 36(b) of the Investment Company Act.

98. PPF II has been damaged by the breach by Defendants ING Investments and

Aeltus of their fiduciary duties to PPF II and its shareholders and by their violations of Sec. 36(b) of the Investment Company Act, by the excessive amounts which the Defendants ING Investments and Aeltus received and will receive from PPF II as investment advisory and investment sub-advisory fees.

### COUNT III

### Against the Defendant ING Distributor for Breach of Fiduciary Duty to PPF IV and Its Shareholders and for Violation of Sec. 36(b) of the Investment Company Act

99. The Plaintiff repeats and realleges all of the preceding paragraphs in this Complaint.

100. The Defendant ING Distributor is liable to PPF IV for breach of its fiduciary duty to PPF IV and its shareholders and for violation of Sec. 36(b) of the Investment Company Act.

101. PPF IV has been damaged by the Defendant ING Distributor's breach of its fiduciary duty to PPF IV and its shareholders and by its violation of Sec. 36(b) of the Investment Company Act, by the amount which the Defendant ING Distributor received from and will receive from PPF IV as Distribution Fees during the Guarantee Period.

## COUNT IV

### Against the Defendants ING Investments and Aeltus for Breach of Fiduciary Duty to PPF IV and Its Shareholders and for Violation of Sec. 36(b) of the Investment Company Act

102. The Plaintiff repeats and realleges all of the preceding paragraphs in this Complaint.

103. The Defendant ING Investments and Aeltus are liable to PPF IV for breach of their fiduciary duties to PPF IV and its shareholders and for violation of Sec. 36(b) of the Investment Company Act.

104. PPF IV has been damaged by the breach by Defendants ING Investments and Aeltus of their fiduciary duties to PPF IV and its shareholders and by their violations of Sec. 36(b) of the Investment Company Act, by the excessive amounts which the Defendants ING Investments and Aeltus received and will receive from PPF IV as investment advisory and investment sub-advisory fees.

WHEREFORE, Plaintiff prays this Honorable Court to:

A. Find the Defendants liable for breach of their fiduciary duties to the Funds and their shareholders and for violations of Sec. 36(b) of the Investment Company Act;

B. Declare that the Distribution Fees and the advisory and sub-advisory fees that have been and continue to be charged the Funds by the Defendants are excessive;

C. Issue a permanent injunction, enjoining the Defendants from continuing to charge the Distribution Fees and the advisory and sub-advisory fees which

28

this Court finds to be excessive;

D. Determine and award to the Funds the amount of excessive Distribution Fees and advisory and sub-advisory fees that the Defendants have received from the Funds;

E. Award the Plaintiff her reasonable attorneys fees and costs; and

F. Any other further relief which this Court finds just and proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: December 17, 2003

          Submitted by the attorneys for the Plaintiff,

          _[signature]_

          Edward F. Haber BBO No. 215620
          Theodore M. Hess-Mahan  BBO No. 557109
          Christine E. Morin BBO No. 600237
          Shapiro Haber & Urmy LLP
          75 State Street
          Boston, MA 02109
          (617) 439-3939

OF COUNSEL:

Richard J. Vita BBO No. 510260
77 Franklin Street, 3rd Fl.
Boston, MA 02110
(617) 426-6566

## **DECLARATION**

Now comes Medea Palandjian, and she hereby deposes and says:

1.  I am a Plaintiff in the action entitled *Medea Palandjian, derivatively on behalf of ING Principal Protection Fund II and ING Principal Protection Fund IV v. ING Funds Distributor, LLC, ING Investments, LLC, and Aeltus Investment Management, Inc., defendants; and ING Principal Protection Fund II and ING Principal Protection Fund IV, Nominal Defendants.*

2.  I have reviewed the Derivative Complaint in the action. The allegations in paragraph 5 of the Complaint are true and accurate to the best of my knowledge and belief.

Signed and sworn to this __11__ day of December, 2003, under the pains and penalties of perjury under the laws of the United States.

Medea Palandjian